No. 23-80025

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SHAH ET AL. v. QUALCOMM INCORPORATED

Petition for Permission to Appeal Order Granting Certification of Class from the
United States District Court, Southern District of California
Case No. 3:17-cv-00121-JO-MSB, The Honorable Jinsook Ohta, Presiding

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
PETITION FOR PERMISSION TO APPEAL
PURSUANT TO RULE 23(F) FROM AN ORDER
GRANTING CLASS CERTIFICATION**

ROBERT A. VAN NEST
EUGENE M. PAIGE
LAURIE CARR MIMS
CODY S. HARRIS
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Additional counsel listed on
signature page

*Attorneys for Petitioners-Defendants
Qualcomm Incorporated, Derek K. Aberle, Steven R. Altman,
Donald J. Rosenberg, William F. Davidson, Jr., Paul E. Jacobs and
Steven M. Mollenkopf*

2129527

# TABLE OF CONTENTS

                                                                                                                       **Page**

I. INTRODUCTION ................................................................................1

II. ARGUMENT .......................................................................................3

     A. Plaintiffs rely on a materialization-of-the-risk theory of loss causation......................................................................3

     B. Plaintiffs' Answer confirms that its damages methodology fails under *Comcast*......................................9

III. CONCLUSION..................................................................................14

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE..............................................................17

2129527

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ................................................................................ *passim*

*Dura Pharmas., Inc. v. Broudo,*
   544 U.S. 336 (2005) ........................................................................................ 13

*In re BP p.l.c. Sec. Litig.,*
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ................................................ 6, 9

*Ind. Public Ret. Sys. v. AAC Holdings, Inc.,*
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ............................................... 9

*Junge v. Geron Corp.,*
   2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .................................................. 11

*Loritz v. Exide Tech.,*
   2015 WL 6790247 (C.D. Cal. July 21, 2015) ................................................ 11

*Ludlow v. BP, P.L.C.,*
   800 F.3d 674 (5th Cir. 2015) ....................................................................... 6, 13

*Miller v. Asensio & Co., Inc.,*
   364 F.3d 223 (4th Cir. 2004) ........................................................................... 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   259 F.3d 154 (3d Cir. 2001) .............................................................................. 5

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda,*
   730 F.3d 1111 (9th Cir. 2013) ................................................................. 4, 5, 6

**Rules**

FED. R. CIV. P. 23 ................................................................................... 2, 3, 11

I.  INTRODUCTION[1]

In answering Qualcomm's Petition, Plaintiffs make no attempt to rebut Qualcomm's argument that *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), requires plaintiffs pursuing a materialization-of-the-risk ("MOTR") theory of loss causation to explain in detail how their damages model will isolate actionable losses based on concealed risks from inactionable losses based on disclosed risks. Nor do they explain how their damages expert, Dr. David I. Tabak, will "disaggregate any non-fraud-related factors that caused investor losses[,]" Answer ("Ans.") at 12, without relying on the facially absurd assumption that the challenged conduct would "inevitably" lead to regulatory actions and litigation with Apple.

Rather, Plaintiffs' sole response to Qualcomm's Petition is to mischaracterize their own loss-causation theory as a conventional "corrective-disclosure" theory—a strategy that their Answer pursues

---

[1] Throughout this brief, "Order" refers to the district court's March 20, 2023 Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification (ECF 279); "Qualcomm" refers to all defendants collectively; in all quotations herein, all internal quotation marks and citations have been omitted, and all emphases added, unless otherwise noted.

1

with vigor. But this approach is inconsistent with Plaintiffs' allegations. Plaintiffs have never alleged that the revelations precipitating the stock-price drops at issue took the form of informational disclosures that corrected prior misrepresentations **bearing on the value of Qualcomm's stock**. That would be a conventional corrective-disclosure theory. Instead, they allege that the revelations took the form of *events*—the filing of regulatory actions and litigation against Qualcomm—revealing that *regulatory and litigation risks to the company's business were greater than investors had been led to believe*. That is a classic MOTR theory, and Plaintiffs' attempts to pretend otherwise are specious. Indeed, their Answer *concedes* that they intend to pursue their MOTR theory at trial. *See* Ans. at 14.

Once the Court rejects Plaintiffs' mischaracterization of their loss-causation theory, the rest of the Rule 23(f) inquiry falls into place. Plaintiffs nowhere rebut Qualcomm's argument that the District Court failed to subject Dr. Tabak's model to the analysis that *Comcast* demands when plaintiffs pursue an MOTR theory. Instead, they assert without authority or logic that Qualcomm's argument is "premature." Ans. at 14. That's wrong: the argument goes to the very heart of the *Comcast* class-certification inquiry in an MOTR case. And Plaintiffs fail

2

to explain how Dr. Tabak intends to create a damages model that will apportion losses attributable solely to the materialization of allegedly concealed risks from those attributable to other factors—a computation made all the more difficult given that Qualcomm routinely warned investors that regulatory actions and litigation were an omnipresent threat to its business.

Put simply, the District Court's order failed to address the only theory under which plaintiffs arguably suffered any harm. It therefore never applied the right predominance analysis and never subjected Plaintiffs' class-certification request to the requirements of that analysis, improperly relieving Plaintiffs of their obligations under *Comcast*. That was manifest error.

For these reasons and more stated below and in the Petition, the Court should grant Qualcomm's Rule 23(f) Petition.

## II. ARGUMENT

### A. Plaintiffs rely on a materialization-of-the-risk theory of loss causation.

Plaintiffs' attempt to evade scrutiny of their MOTR theory only confirms the need for this Court's review. Plaintiffs argue that this Court need not address their MOTR theory because "the District Court

3

2129527

did not adopt it." Ans. at 18. But the District Court's failure to adopt and thus to properly test the loss-causation theory that Plaintiffs are actually asserting was, itself, manifest error.

Plaintiffs' entire case is, and always has been, predicated on MOTR. Indeed, Plaintiffs' Answer concedes that they "can (and will)" press their MOTR theory at trial. Ans. at 14. That is because Plaintiffs' purported "corrective disclosure" theory is just MOTR under a different name. And it is the theory itself that matters, not the label Plaintiffs attach to it to suit their needs at various stages of the litigation. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013) (rejecting attempt to evade dismissal by "shoehorn[ing]" a legally precluded theory of loss causation into another recognized in law).

As this Court has pointed out, real differences separate the MOTR and standard corrective-disclosure theories of loss causation. *See Nuveen*, 730 F.3d at 1119–20 (explaining differences). The key difference is that, in a case founded on an MOTR theory, the investors' losses are precipitated by the materialization of an *event* rather than the disclosure of *information* about the company's value. *Id.* at 1120.

4

2129527

Under a standard corrective-disclosure theory, a securities defendant is accused of making some misstatement or omission that conceals information related to the security's current value, such as negative information about a company's financial statements, financial condition, or projected future earnings. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001) (collecting cases). When that alleged misstatement is corrected by a *subsequent disclosure of value-related information*, the price of the security incorporates the negative value of the corrective information and the stock price falls. For example, this Court has held that loss causation was established when, following earlier misstatements relating to a company's financial statements, "the stock fell precipitously after the company began to reveal figures showing the company's true financial condition." *Nuveen*, 730 F.3d at 1119.

But in circuits that recognize the MOTR theory, a securities defendant may be accused of making some misstatement that "concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value" of a security. *Id.* at 1120. The alleged misstatements purportedly conceal the risk of a contingent *event* that later comes to pass. When that *event* materializes,

5

the stock price falls, and investors may allege that the resulting losses were "within the zone of risk concealed by the misrepresentations and omissions." *Id*.

Here, *only* a MOTR theory of loss causation aligns with Plaintiffs' description of the revelations that precipitated the stock-price drops. Those precipitating revelations were *events*—the initiation of regulatory actions or litigation containing allegations, not disclosures of information bearing on the company's (and thus the security's) value, such as negative information about Qualcomm's financial statements, financial condition, projected future earnings, or the like. In other words, it is not the conduct alleged in the legal actions against Qualcomm—even if ultimately proven—that affected the stock price. Rather, it is *the very existence of the actions* that allegedly precipitated the stock-price declines, much as the *event* of an oil-rig blowout allegedly caused BP's stock-price declines in the Deepwater Horizon case. *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 691 (5th Cir. 2015); *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013).

Plaintiffs' prior characterizations of their theory brand it conclusively as MOTR-based. They have alleged that Defendants concealed business practices that "caused actions by anti-competition

6

2129527

regulators around the world[,]" thereby harming investors when such actions came to pass. ECF 151 at 24. They have never alleged that the supposedly concealed business practices *decreased the value of the company independent of such regulatory or litigation events*. To the contrary, even if the alleged practices were anticompetitive, such conduct would have increased company profits and value—but for the regulatory or litigation *events*.

Indeed, Plaintiffs have consistently argued, including in opposition to dispositive motions, that they base their alleged economic losses on the materialization of regulatory action or antitrust litigation that they claim investors had been led to believe was less likely than it was. For example:

- Plaintiffs argued in response to Defendants' motion for judgment on the pleadings that "[h]ad investors known that Qualcomm was engaged in anti-competitive licensing practices[,] . . . investors would have understood the ***foreseeable risks that materialized*** across the globe." ECF 151 at 25. Plaintiffs further argued that Defendants' alleged "denials of their anticompetitive practices . . . ***concealed the substantial risks facing Qualcomm*** as a

7

2129527

result of its undisclosed practices, ***that eventually materialized*** and caused the value of Qualcomm's shares to plummet by billions of dollars." *Id.*

- At oral argument on that motion, the District Court asked Plaintiffs to confirm that they were alleging that investors "believe[d] that Qualcomm was doing something even safer than what they actually were doing" while the reality was "a lot dicier from a pro-competitive standpoint[.]" ECF 193 at 35:16–36:4. Plaintiffs agreed. *Id.* at 36:6.

- Plaintiffs also stated that "Plaintiffs seek to hold Defendants liable for misstating and concealing certain business practices that concealed the severe ***risk of regulatory actions*** like those taken by the KFTC, EC, and other regulators across the globe." ECF 237 at 6–7.

- Even now, far from disavowing MOTR, Plaintiffs assert that they intend to present that theory of liability at trial. Ans. at 14.

Plaintiffs' theory is therefore very different from—and inconsistent with—the typical case in which a securities defendant conceals negative information about a company's value, such as its

8

2129527

financial condition or future earnings potential. Plaintiffs **must** invoke the MOTR theory in order to have any plausible theory of loss at all. And as Defendants' Petition demonstrated, consistent with *Comcast*, Plaintiffs were required to offer a damages methodology that could measure the amount of damages resulting from such understated risks. Petition ("Pet.") at 19–20. The District Court's failure to consider whether they can do so—indeed, its failure even to acknowledge that it was looking at an MOTR theory—is manifest error warranting review.

### B. Plaintiffs' Answer confirms that its damages methodology fails under *Comcast*.

As the Petition explains, *Comcast* requires plaintiffs pursuing a MOTR theory of loss causation "to provide the specifics of their proposed methodology" at the class-certification stage, including a "complete explication of how Plaintiffs propose to use an event study to calculate class members' damages." *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17; Pet. at 23. That explication must explain how the plaintiffs' expert will "factor in the risk on which Plaintiff bases its materialization-of-the-risk theory." *Ind. Public Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at *24 (M.D. Tenn. Feb. 24, 2023).

9

There is no dispute that Plaintiffs failed to provide that analysis here. Plaintiffs identify no statement in Dr. Tabak's reports indicating that he will make any attempt to disaggregate actionable losses based on the materialization of allegedly concealed risks from losses attributable to the materialization of disclosed risks. No such statement exists; his reports are silent on the issue.

That leaves Plaintiffs with Dr. Tabak's assertion that he will simply assume that "Qualcomm's allegedly misrepresented licensing and bundling practices would ***inevitably*** lead to the regulatory and customer scrutiny" that constitute Plaintiffs' alleged corrective disclosures. Dr. David I. Tabak Expert Report ("Tabak Report") ¶ 64, ECF 217-2.[2] But Plaintiffs' Answer makes no effort to defend that implausible assumption. For example, they ignore the indisputable fact that the FTC's action was far from inevitable—it commenced over a rare, published dissent and ended in failure for the Commission. Pet. at 28.

---

[2] As noted in Qualcomm's Petition, Plaintiffs have nowhere suggested that the "bundling practices, standing alone made regulatory action or lawsuits inevitable." Pet. at 26 n. 11.

10

Rather than defend the implausible assumption on which their damages model rests, Plaintiffs dodge and weave. First, they argue that it is "premature" to consider whether the regulatory actions and litigation against Qualcomm were "100% likely to occur," as they have told their expert to assume. Ans. at 14; Tabak Report ¶ 64. But this is not an inquiry that can be kicked down the road. *Comcast* requires *at the class-certification stage* that "any model supporting a plaintiff's damages case" be "consistent with its liability case," and holds that if the model "does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 34–35. Plaintiffs cannot satisfy *Comcast* by relying on a damages model that makes no effort to disaggregate actionable from inactionable materializations of risk, and instead rests on a wildly implausible assumption unsupported by any evidence.[3]

---

[3] Even where a plaintiff relies on the "traditional corrective disclosure" theory of loss causation, courts in this Circuit are split on how much detail a plaintiff must present at class certification. *Compare Junge v. Geron Corp.*, 2022 WL 1002446, at *6 (N.D. Cal. Apr. 2, 2022), *with Loritz v. Exide Tech.*, 2015 WL 6790247, *22 (C.D. Cal. July 21, 2015).

Second, Plaintiffs claim that Dr. Tabak "can (and will)" "disaggregate investor losses based on the likelihood of enforcement actions occurring[.]" Ans. at 14. That empty assurance falls far short of what *Comcast* requires, and indeed undermines *Comcast*'s rule altogether. What's more, Plaintiffs cite nothing in the record to support their assertion because no support for it exists: Dr. Tabak **never** said he would perform that analysis, much less explained how he would go about it. And although Plaintiffs claim that the District Court recognized that Dr. Tabak "can perform such a disaggregation calculation," *id.* at 15, the District Court did no such thing. Given that the District Court failed even to mention the MOTR theory, it is obvious that the court never assessed whether Plaintiffs' damages model could account for it. Instead, the District Court presumed only that Dr. Tabak would be able to disaggregate losses attributable from the alleged bundling statements from those attributable to the licensing statements that had been dismissed from the case. *See* Order at 33 n.20.

Third, Plaintiffs try to skirt their burden under *Comcast* by arguing that Dr. Tabak's damages calculation "merely depends on what the finder of fact determines about the amount of the risk that was not disclosed to the market." Ans. at 15. But plaintiffs in securities-fraud

12

2129527

cases must isolate the extent to which a decline in stock price is due to fraud and not other factors. *Dura Pharmas., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 232 (4th Cir. 2004); *Ludlow*, 800 F.3d at 691.

Here, that challenge would be insurmountable. Each of the alleged corrective events focused on a number of Qualcomm's business practices, most of which were wholly unrelated to the alleged "bundling practices" that remain in this case. And as Qualcomm's Petition explains, no case ***anywhere in the world*** has ultimately found Qualcomm liable for an antitrust violation based on the alleged "bundling" that is the basis of Plaintiffs' only remaining claim. Pet. at 28. Plaintiffs' references to the recent Korea Supreme Court's order are both misguided and misleading—that order focused on Qualcomm's so-called "no-license-no-chips" and "device level licensing" practices, both of which Plaintiffs admit were well-known by the market throughout the class period. Ans. at 2; Pet. at 24 n.18.

Plaintiffs' Answer thus confirms that they failed to isolate losses stemming from the materialization of the allegedly concealed risk—i.e., the allegedly increased risk of antitrust scrutiny resulting from the so-called bundling practices. That failure violated *Comcast*. For the

13

District Court to overlook that failure—indeed, to overlook Plaintiffs' entire MOTR theory—was manifest error.

## III. CONCLUSION

For the reasons stated above, and in the Petition, the Court should grant Qualcomm's Petition.

Dated: April 20, 2023    Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

*s/ Robert A. Van Nest*
ROBERT A. VAN NEST (84065)
(rvannest@keker.com)
EUGENE M. PAIGE (202849)
(epaige@keker.com)
LAURIE CARR MIMS (241584)
(lmims@keker.com)
CODY S. HARRIS (255302)
(charris@keker.com)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Tel: (415-391-5400
Fax: (415) 397-7188

CRAVATH, SWAINE & MOORE LLP
ANTONY L. RYAN (pro hac vice)
(aryan@cravath.com)
YONATAN EVEN (pro hac vice)
(yeven@cravath.com)
JUSTIN C. CLARKE (pro hac vice)
(jcclarke@cravath.com)
M. BRENT BYARS (pro hac vice)

14

2129527

(mbyars@cravath.com)
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

COOLEY LLP
STEVEN M. STRAUSS (99153)
(sms@cooley.com)
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
CHRISTOPHER DURBIN (218611)
(cdurbin@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121-9109
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Petitioners-Defendants
QUALCOMM INCORPORATED.
DEREK K. ABERLE, STEVEN R.
ALTMAN, DONALD J. ROSENBERG,
WILLIAM F. DAVIDSON, JR.,
PAUL E. JACOBS and STEVEN M.
MOLLENKOPF

15

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 because it is proportionally spaced, has a typeface of 14 points or more and contains 2,532 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This petition also complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportional typeface using Microsoft Word 2023 in 14-point Century Schoolbook font.

Dated:  April 20, 2023                    KEKER, VAN NEST & PETERS LLP

*s/ Robert A. Van Nest*
ROBERT A. VAN NEST
633 Battery Street
San Francisco, CA 94111
Tel: (415-391-5400
Fax: (415) 397-7188
rvannest@keker.com

2129527

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/Robert A. Van Nest*
ROBERT A. VAN NEST

2129527